## Pennock *against* Freeman.

1 w-401
148   390
1  W\`   401
202       ¹648

A decree for specific performance of an agreement respecting the purchase and sale of land, is of grace and not of right. It rests in the discretion of the chancellor, who would, for any thing inequitable, withhold his assistance and leave the parties to their legal remedies on the agreement. An ejectment may be sustained to enforce an equity, but only as a substitute for a bill, and subject to all those considerations by which a claim to have the land itself may be defeated.

The fiduciary relation which exists between an administrator and heir, makes them so far privies in representation, that the act of the administrator will bind the heir, as that of his trustee.

An administrator necessarily succeeds to the decedent's right to rescind a contract for the purchase and sale of land by recovering back the purchase money, or he may leave the heir to affirm it by insisting on a conveyance.

Two persons entered into a parol agreement to purchase a tract of land, which was afterwards purchased, and a deed taken in the name of one of them: the other died; it was held that his administrator might maintain an action against the survivor to recover back the money advanced by his intestate, on the ground that the contract was vitiated in the origin by the fraud of the defendant, the surviving party. But in such action the contract must be wholly disaffirmed. The measure of damages shall not be estimated from any profit which was made upon a subsequent sale of the land.

Against a right of action, dependent on the existence of a secret fraud, the statute of limitation runs but from the period of discovery.

Under the forty-second rule of the circuit court, if a witness resides more than forty miles from the court, his deposition may be read, although he has not been served with a *subpœna*.

Testimony taken in another state upon a joint and several commission, may be read in evidence, although the commissioner named by the defendant did not attend at the execution of the commission.

APPEAL from the circuit court of *Lancaster* county.

This was an action on the case by *George Yentzer* administrator of *Jacob Pennock* deceased, for the use of *Franklin W. Pennock* his son and heir at law, against *Clarkson Freeman*, in which the declaration sets out specially the cause of action.

" *Clarkson Freeman*, late of the said county, doctor of medicine, was attached to answer *George Yentzer*, administrator *de bonis non* of *Jacob Pennock* late of the borough of Lancaster, deceased, for the use of *Franklin W. Pennock*, a minor son and only heir of the said *Jacob Pennock* deceased, who sues for his use by his guardian *John Yentzer*, in a plea of trespass on the case; whereupon the said *George Yentzer*, administrator as aforesaid, for the use aforesaid, complains, for that whereas, on or about the 10th day of November, in the year of our Lord 1810, at the county aforesaid, in a certain discourse which they, the said *Clarkson Freeman* and the said *Jacob Pennock*, then and there had and held, it was then and there agreed, by and between the said *Clarkson* and *Jacob*, as follows, to wit that they would join in the purchase (each paying one half) of a tract of land, situate in the state of Ohio, with a sawmill thereon erected, containing twenty-five acres of land, be the same more or less, with

3 A

[Pennock v. Freeman.]

the rights, members, and appurtenances thereto belonging, at and for the sum of 1951 dollars, the deed for the same to be taken in the name of *Clarkson Freeman* alone, to be held nevertheless by him, as to one moiety thereof, in trust for the said *Jacob Pennock* and his heirs in fee, which said promise and undertaking, being so as aforesaid made and concluded between the said *Clarkson* and *Jacob*, the said purchase was accordingly made, and a deed was executed by the vendor to *Clarkson Freeman* alone, (in trust nevertheless as to a moiety thereof as aforesaid) and a moiety or half part of the said purchase was paid by the said *Jacob Pennock* in the fulfilment of the promise on his part. And the said *Clarkson Freeman*, being so as aforesaid seised and possessed of the said land in trust as to one moiety to the use of the said *Jacob Pennock* and his heirs, then and there, in the same discourse, it was agreed and understood, that in case the said *Jacob Pennock* in his lifetime, or his heirs and legal representatives after his death, would release to the said *Clarkson* and his heirs, the equity of the said *Jacob* and his heirs in the said land, and all the right, title and interest of, in and to the same; that then and in that case, in consideration thereof, that he the said *Clarkson* would pay to the said *Jacob Pennock*, his heirs, executors, administrators or assigns, as much money as the one half of the said lands, with the appurtenances, is reasonably worth, when he should be thereunto afterwards requested. And the said *Jacob* in his lifetime, and the said *George Yentzer*, administrator aforesaid to the use aforesaid, since his death, aver, that they reasonably deserve to have for the said moiety of the said land, the sum of 5000 dollars, lawful money of the United States. And the said *George* further avers, that he and the said guardian, *John Yentzer*, before the issuing of the original writ in this cause, to wit, on the 7th day of August, in the year of our Lord 1821, at the county aforesaid, tendered to the said *Clarkson Freeman*, a release of all the equity, right, title, interest and claim of the heirs of the said *Jacob Pennock* deceased, of, in and to the said moiety of the said land, and then and there demanded payment of the said *Clarkson* for the same. Yet the said *Clarkson*, his promise and undertaking in no wise regarding, but contriving and fraudulently intending to deceive and defraud the said *Jacob Pennock* in his lifetime, and the said *George Yentzer*, administrator as aforesaid, to the use aforesaid, since his death, the aforesaid sum of money or any part thereof to the said *George Yentzer*, administrator as aforesaid, to the use aforesaid hath not paid, although to pay the same he, the said *Clarkson*, by the said *George*, was frequently requested; but to pay the same or any part thereof, he the said *Clarkson* hitherto hath refused, and still doth refuse, to the damage of the said *George*, to the use aforesaid, 5000 dollars, and therefore he brings suit.

"And whereas, also afterwards, to wit the day and year last aforesaid, the said *Clarkson Freeman*, at the county aforesaid, was indebted to the said *George Yentzer*, administrator as aforesaid, to the

[Pennock v. Freeman.]

use aforesaid, in the sum of other 5000 dollars, lawful money of the United States, for money which he the said *Clarkson Freeman* before that time had had and received, to the use of the said *George Yentzer*, administrator as aforesaid, to the use aforesaid ; and being so indebted, he the said *Clarkson Freeman*, in consideration thereof, afterwards, to wit the said 7th day of August in the year of our Lord 1821, at the county aforesaid, undertook, and then and there faithfully promised the said *George Yentzer*, administrator aforesaid, to the use aforesaid, to pay him the said sum of money last mentioned when he should be afterwards thereto requested. Nevertheless, the said *Clarkson Freeman*, his promise as aforesaid not regarding, but contriving and fraudulently intending the said *George Yentzer*, administrator as aforesaid, to the use aforesaid, in this behalf craftily and subtilely to deceive and defraud, the aforesaid sum of money or any part thereof, to the said *George Yentzer*, to the use aforesaid, hath not paid, although to pay the same, the said *Clarkson Freeman* by the said *George*, the day and year last aforesaid, and at divers other times, at the county aforesaid, was requested ; but to pay the same or any part thereof to the said *George*, to the use aforesaid, he the said *Clarkson* hitherto hath refused, and still doth refuse, to the damage of the said *George Yentzer*, administrator as aforesaid, to the use aforesaid, 5000 dollars, like lawful money, and therefore he brings suit, &c. And brings here into court the letters of administration, which testify the granting of the said administration to the said *George Yentzer*."

The pleas of the defendant were *non assumpsit*, and *non assumpsit infra sex annos*.

During the progress of the trial the plaintiff offered in evidence the deposition of a witness who did not live in the county, nor within forty miles of the court, and who had not been subpœnaed, which was objected to, and the objection was overruled, and exception taken by the defendant. He also offered in evidence the testimony of a witness taken in another state upon a commission, which was objected to, on the ground that the commissioner, named by him, did not attend at the execution of the commission. This objection was also overruled, and exception taken.

The following points put to the court, and the errors assigned, will sufficiently explain the facts of the case, to understand the principles decided.

The court is respectfully requested to charge the jury, and file their charge of record, on the following points, on the part of the defendant.

1. This suit is an action of *assumpsit* on an alleged promise by defendant to pay certain money, and the declaration alleges that " in the same discourse it was agreed and understood that in case the said *Jacob Pennock*, in his lifetime, or his heirs and legal representatives after his death, would release to the said *Clarkson* and his heirs, the equity of the said *Jacob* and his heirs in the said land ;

[Pennock v. Freeman.]

and all the right, title and interest of, in and to the same, that then and in that case, in consideration thereof, that he, the said *Clarkson*, would pay, &c." There must be full proof of this agreement, and proof of only part is not a compliance with the allegation in the declaration, and they cannot recover in this action.

2. That to support this action, a *breach* of the contract by the defendant, during the lifetime of *Jacob Pennock*, must be shown, by proof, that a demand was made by the said *Jacob* in his lifetime, of the said *Clarkson*, to convey to him (the said *Jacob*) one moiety of the land alleged to have been purchased in partnership, and the refusal of the said *Clarkson Freeman* to convey the same.

3. That to support this action, proof must be made of a demand of half the value of the land by *Jacob Pennock*, in his lifetime, of the said *Clarkson*, and an offer by him (the said *Jacob*) to release his equity in the said lands, to the said defendant, and proof of a tender made of the said release, by the said *Jacob Pennock*, in his lifetime, to the said *Clarkson Freeman*, at the time of the demand of the money, or amount of said half value of the land.

4. That a demand by the guardian of the heir of *Jacob Pennock*, after the decease of the said *Jacob*, of the said *Clarkson Freeman*, to convey one moiety of the said land to the said heir, and a tender at the same time of a release of all the interest of the said heir, in the said land, signed by the said guardian, even if duly proved, cannot avail the plaintiff to recover damages in this cause ; because such a release, drawn by a guardian, affecting the rights of his ward, in relation to the real estate of the said ward, is not good and valid in law ; and therefore the said release, or a tender of the same, does not import a consideration, sufficient in law, to support a promise to pay money.

A verdict was rendered for the plaintiff for 1753 dollars and 33 cents. A motion was made by the defendant for a new trial, which was overruled ; and he appealed to this court, and assigned the following reasons.

1. The above suit is brought to recover the amount due to *Franklin W. Pennock*, the son and heir of *Jacob Pennock* deceased, as set out in the declaration ; and this suit cannot be maintained without proof of a release, executed and tendered by the said *Franklin W. Pennock*, of his moiety of the land. The release of the guardian of the said *Franklin W. Pennock*, is entirely insufficient ; the said *Franklin W. Pennock* was of full age, for more than one year precedent to the trial.

2. The court erred in charging the jury, that, although the action could not be supported under the testimony in the cause, upon the first count in the declaration, the allegations in that count not being sustained by the evidence, yet that plaintiff was entitled to recover on the second count of the declaration, the amount of moneys advanced by *Jacob Pennock* in his lifetime, in 1810, to Dr *Freeman*, on account of the purchase, if the jury believe there was fraud and cir-

[Pennock v. Freeman.]

cumvention practised by defendant, in procuring *Pennock* to join in the purchase.

3. The court erred in receiving the deposition of *Daniel Moore*, esquire, and the papers accompanying it; and in admitting the commission, and deposition of *Mary Moran* taken under it.

4. The evidence of the sale of an undivided moiety of the tract of land, by Dr *C. Freeman* to *Peter Good*, for 1700 dollars, in 1814, and the deed for the same, were improperly admitted.

5. There was no evidence, on the trial of the cause, that *Jacob Pennock* ever paid his full portion of the purchase money. The only evidence that was given, was, that he paid 700 dollars; and there was evidence adduced by plaintiff to show, that a note in the Farmer's Bank for 600 dollars was discounted, for the mutual use of defendant and the said *Jacob Pennock*, and that defendant had to pay the whole of it, after *Pennock's* death. There was also evidence to show, that the whole tract has been entirely unproductive since 1814, and without any means by which it can be made productive; and the actual value of the whole tract, at this time, does not exceed 500 dollars.

6. The plea of *non assumpsit infra sex annos* precluded plaintiff from recovering the amount of moneys alleged to have been advanced in 1810, for which verdict was rendered.

7. The second count in the declaration is for money had and received, for the use of the administrator as such, who sues for the use of *Franklin W. Pennock;* and evidence of moneys received in the lifetime of *Jacob Pennock* from him, will not support this count.

8. The first count is in affirmance of the contract, and the second is in disaffirmance of the contract. Neither count, it is believed, can be supported. The first could not be, as the court declared; and as the verdict is general, it is erroneous and cannot be supported.

9. The verdict is contrary to the weight of the evidence and the justice of the case.

*Rogers* and *Champneys*, for appellants.
*Jenkins* and *Hopkins*, for appellee.

The opinion of the Court was delivered by
GIBSON, C. J.—Though it was held when the cause was here before(a) that a suit might be maintained by the administrator, it

(a) Freeman *against* Pennock.

*Opinion of the Supreme Court, delivered by Chief Justice Tilghman, May* 28, 1821. *Gibson and Duncan, Justices, assented.* 3 *Penns. Rep.* 317, *in note.*

TILGHMAN, C. J.—This is an action on the case founded on an agreement alleged by the plaintiff to have been made between *Jacob Pennock* the intestate, and Doctor *Clarkson Freeman* the defendant below, respecting the purchase of a tract of land in

[Pennock v. Freeman.]

has nevertheless been argued, that a recovery by him would leave the defendant exposed to the ejectment of the heir, who would not, it is said, be estopped by a judgment to which he was neither

the state of Ohio. Each party was to pay a moiety of the purchase money, and the deed was to be taken in the name of *Freeman*, who was to hold one half in trust for *Pennock*, and convey it to him on demand. The purchase was made according to the agreement, the money paid equally by the parties, and the deed of conveyance executed to *Freeman* alone, who afterwards, in the lifetime of *Pennock*, refused to acknowledge the trust, or to convey a moiety to *Pennock*, though required by him to do so. *Pennock* left a widow, who died, pending this suit, and one child, an infant. Two bills of exception were taken to evidence admitted on the trial, and one general exception to the charge of the court.

The first exception was to the admission of *Jacob Miller* the plaintiff, as a witness. Previous to his being offered as a witness, it was proved that his administration account was settled, and he executed a release, which divested him of all interest in the estate of the intestate, so that his liability to costs was the only obstacle to his competency, and to remove this objection, 18 dollars and 12 cents, costs which had already accrued, were paid by *John Yentzer*, guardian of *Franklin W. Pennock*, the only child of the intestate, and a recognizance to the defendant in the sum of 1000 dollars was entered into by *James Hopkins* and *William Jenkins*, esquires, conditioned for their payment of " all costs incurred and to be incurred in the prosecution of this suit to the said Doctor *C. Freeman*, and which may accrue to him and all the officers of the court, witnesses produced by him, and all others *that may be* entitled to costs to the final determination of the cause, if the same should be determined in favour of the defendant, the same being legally taxed against the plaintiff in this cause." In the argument on this bill of exceptions, many points were made of which it is unnecessary to take notice, as there is one decisive objection to the plaintiff's competency, and that is, that inasmuch as this recognizance covered those costs only which should be incurred on the part of the defendant, the plaintiff remained answerable for his own costs, which, in case of a verdict in his favour, he would recover against the defendant. He was, therefore, immediately interested in the event of the suit, and ought not to have been admitted as a witness. It will be understood that the court gives no opinion whether the witness would have been competent, if the recognizance had been so drawn as to include all the costs, both of the plaintiff and defendant.

The second bill of exceptions was to the admission of parol evidence to prove the contents of a paper which was once in the possession of the defendant. The counsel for the defendant objected to the evidence, because no notice to produce it had been given to the defendant. The plaintiff's counsel admit the general rule, that notice is necessary, but contend that the paper in question was of no importance, and created no obligation; that it was the property of the defendant, and might be destroyed by him at his pleasure, and therefore, that it was unnecessary to give him notice to produce it. This paper, according to the account given of it by the witness who proved the contents, contained a statement in the handwriting of the defendant, of the money paid by the defendant, and by *Jacob Pennock*, respectively, towards the purchase of the land in which they were partners. It was not signed by the defendant, but was produced by him to the plaintiff.

Now, when it is considered, that the parties were at issue respecting the existence of a partnership, it will appear at once, that the paper was extremely important, because it proved the partnership by the written confession of the defendant. Whether it created any obligation, and whether it was the property of the defendant and might be destroyed by him without blame, are questions of no moment. The paper itself was better evidence than parol testimony of its contents, and therefore the defendant should have had an opportunity of producing it. It was plainly within the rule which required notice, and the parol evidence ought not to have been admitted.

The defendant's counsel proposed ten questions to the president of the court of common pleas, on which they requested his opinion to be delivered to the jury, and they now complain that several of these questions were not answered.

That it is error not to answer a legal question pertinent to the issue, has been often decided. The counsel for the plaintiff say, that the charge of the president contains an answer to all the questions proposed. I rather incline to the opinion that the questions are not all answered; but that point is unimportant, as this judgment must

[Pennock v. Freeman.]

a party nor privy ; and hence it has been contended, that a release by the heir ought to have preceded the administrator's action. The point is made on the assumption of a position entirely unten-

be reversed for other reasons.   But as it is often matter of dispute, whether the questions proposed to the court have been answered, I will suggest a mode of proceeding in such cases, which will prevent all possibility of dispute, and that is, to' give the opinion on each question, in writing, immediately following the question.   When the judge, instead of doing this, gives a general charge, in which he intends to answer all the questions proposed to him, it may sometimes happen that there may be an omission, or it may be doubtful whether there is an omission or not.   These doubts have frequently occurred, and pains should be taken to prevent them, as they sometimes occasion the reversal of judgments which this court would wish to support.

But other errors have been assigned in the charge of the president.   These may be reduced to two points.   Is this action maintainable by the administrator of *Pennock*? And if it is, what should be the measure of damages?

1.  The objection to the action is, that according to the plaintiff 's own showing, there was a resulting trust to *Pennock* for a moiety of the land purchased in partnership, and therefore there is an equity in the heir, which the administrator has no right to convert into personal property, by this suit for damages.   We have no evidence of the laws of the state of Ohio, but if they recognize the same principles of equity which prevail in other states, there would be an equity in the heir of *Pennock*, as to a moiety of the land purchased in partnership.   Nevertheless, if the agreement was parol (as the evidence seems to indicate), and it was broken in the lifetime of *Pennock*, by the defendant's refusal to convey him a moiety of this land, a cause of action accrued, which, after his death, could be prosecuted by his administrator only.   The heir cannot support an action for this breach of promise in the lifetime of his ancestor. Whether there may not be cases in which equity would permit the heir to make use of the name of the administrator to recover damages for his own benefit, I will not now inquire, because it is evident that any damages which may be recovered in this case would be for the use of the heir, he being the only child of his father, and entitled to the whole estate, both real and personal.   There is a peculiar reason why the action should be maintained by the administrator in the present instance, and that is, that the courts of Pennsylvania have no jurisdiction over land lying in Ohio, and therefore, the only relief they can afford on this contract, is a personal action, which is very convenient, as both parties reside here.   It may be more for the advantage of the heir of *Pennock*, to recover *damages* on this contract than to resort to a chancery suit in the state of Ohio, for the land itself; and if the contract is of such a nature as to give an action for damages, there can be no reason why the courts of Pennsylvania should obstruct it.

Where two citizens of the same state enter into an agreement respecting lands in another state, they naturally look to the laws of their own state for redress, in case of breach of contract.   And in this reasonable expectation, the courts will not disappoint them.   Of this, the case of *Penn* v. *Baltimore* affords innumerable examples, where the court of chancery of England compelled Lord *Baltimore* to a specific performance of articles of agreement for fixing the boundaries between the provinces of Maryland and Pennsylvania.   If we had a court of chancery, no doubt *Freeman* might be compelled to execute a conveyance to the heir of *Pennock*.   But not having such a court, I see no remedy but by an action on the case, on this parol contract, by the administrators of *Pennock*. ·

2.  But if the action be maintainable, what should be the measure of damages? In considering this question, I will take for granted that the plaintiff is acting in concert with the guardian of the heir, which, from the record, I think myself warranted in doing.   And under those circumstances, if the defendant did, upon request, refuse to convey a moiety of the land to *Pennock* in his lifetime, I see no objection to recovering one half the value of the land in damages.   No second action will lie on this contract, and therefore, the defendant can never again be exposed to answer in damages.   But damages to this amount, the defendant cannot say would be unjust, because the heir might afterwards go into the state of Ohio, and recover one half of the land.   This I cannot suppose, because, being contrary to equity, it would not be permitted in a court of equity.   Where one has a contract for land on which he may support an action at law, he may take his choice to sue at law, or seek a specific per-

able, that the decedent had a vested estate in the land. He certainly had an equity, which, if no obstacle to a specific execution of the trust were found in the circumstances, might have given him such an estate. But a decree of specific performance is of grace, and not of right. It rests in the discretion of the chancellor, who

formance in equity. But he cannot do both. He cannot recover damages at law from his trustee, for refusing to convey the legal estate, and then go into equity and recover the estate itself, on the ground of a resulting trust. Having made his election to sue at law, he must abide by it.

It appears that in this case the jury gave the value of a moiety of the land in damages, but the damages were given *generally,* and the declaration consists of five counts, two of which are said to be bad by the plaintiff in error. If so, the judgment would be erroneous, because this court cannot ascertain on what counts the jury meant to assess the damages. Where some of the counts are bad, and no evidence is given in support of them, the court before whom the cause is tried, may amend the verdict by entering it in favour of the defendant on the bad counts and for the plaintiff on the good counts only. But a court of error knows nothing of the evidence and can make no such amendment. Let us examine, then, the fourth and fifth counts in this declaration. The fourth count, in the first place, sets forth a verbal agreement between *Jacob Pennock* and the defendant, to join in the purchase of a tract of land containing twenty-five acres, with a sawmill, &c. for the sum of 1951 dollars, of which each party was to pay one half, and the deed was to be taken in the name of the defendant alone, to be held by him nevertheless, as to one moiety, in trust for the said *Pennock,* his heirs and assigns; and that the said purchase was accordingly made, a deed executed by the vendor to the defendant alone (in trust as aforesaid), and a moiety of the purchase money paid by the said *Pennock.* The declaration then avers that, in consideration of the promises, the defendant promised to pay to the said *Pennock,* his administrators and assigns, as much money as a moiety of the said land with the appurtenances was reasonably worth, &c. Now what consideration is there for this promise? I confess I can perceive none. The defendant had done every thing which the agreement required him to do; he had paid half the purchase money and taken a deed in his own name (in trust for *Pennock* as to a moiety): why then should he pay one half the value of the land? or what was he to receive in consideration of such payment? It does not appear that he was to receive any thing. If *Pennock* had agreed to release his equity in the land, it would have been sufficient, for then the defendant would have had title to the whole tract both at law and in equity. It is argued indeed by the plaintiff's counsel, that the equity of *Pennock* would have been virtually released by acceptance of half the value of the land. But this kind of argumentative release is not a sufficient consideration to support an assumption. The defendant might have paid his money, and then had to encounter a suit in chancery. If the agreement was, that *Pennock* should release his equity, the declaration should have so averred it, and a release should have been tendered when the money was demanded. I am of opinion, therefore, that this count is bad, because it sets forth a promise without consideration. The fifth count avers an agreement to purchase in partnership, a purchase made, a deed taken in the name of the defendant alone, the purchase money paid by each in moieties, &c. as stated in the fourth count, and then assigns a breach of promise as follows. " Yet the said defendant, his promise and agreement aforesaid in no wise regarding, since the conveyance of the said tract of land to him as aforesaid, gainsays his said promise and agreement, and refuses to hold and stand seised of an undivided moiety of the said tract of land to and for the use of the said *Jacob Pennock* in his lifetime and for the use of the legal representatives of the said *Jacob* since his decease, &c." The substance of the alleged injury is, that the defendant has told a falsehood by denying the trust: but this denial has not divested the right of *Pennock.* His equity remains just as strong after the denial as before, nor can any *words* of the defendant affect it. I cannot perceive, therefore, that this count sets forth any act or omission of the defendant by which the plaintiff has suffered damage.

Upon the whole then, my opinion is that the judgment should be reversed, and a *venire de novo* awarded; and inasmuch as it appears that the defendant has been compelled to pay the sum recovered, the plaintiff must make restitution.

would, for any thing inequitable, withhold his assistance, and leave the parties to their legal remedies on the agreement. Such is the course in respect of a purchase from a party intoxicated, though not by the procurement of the purchaser ; yet such a purchase is unimpeachable at law. It is a want of attention to this, among other things, which leads us to suppose, as we sometimes erroneously do, that the equitable, is equivalent to the legal estate, in every respect but that of form. We sustain an ejectment on such an equity, it is true, but only as a substitute for a bill, and subject to all those considerations by which a claim to have the land itself may be defeated. So, for a fraud which avoids the contract, the purchaser may rescind the bargain, and elect to have his money again, even at law. The courts in Ohio, it is believed, have an equity side on which the proceeding is by bill ; but the principles of equity, whatever be the form of their administration, would surely bar the heir from recovering the land there, after the administrator had recovered back the price of it here.

But that the heir is in no privity to the administrator, is also unfounded. He is entitled, at least, to a share of the residue of what may be recovered, after payment of debts ; and standing in a fiduciary relation, he is so far a privy in representation, that the act of the administrator will bind him as that of his trustee. But the rights of creditors, for whom also the administrator is a trustee, are not to be postponed to the equities of the heir against those persons in whose hands the assets are found ; and this personal right of action is clearly assets to be collected for the protection of domestic creditors (of the possibility of whose existence in the present case it is impossible to judge), instead of sending them to pursue their claims in foreign courts against real assets which may not be as accessible abroad as the personal assets are at home. In order to perform this duty of protection, the nature of which was pointed out, and its obligation enforced, in *Mothland* v. *Wireman*, 3 *Penns. Rep.* 187, and *Miller's Appeal*, 3 *Rawle* 319 ; the administrator necessarily succeeds to the decedent's right to rescind the contract, by recovering back the purchase money, or leave the heir to affirm it, by insisting on a conveyance.

But though it had been held, that a personal action might lie, the nature of the case on which it might be maintained, had not been intimated. It would be founded only on a breach of the contract, or a rescission of it. But when the cause came to be tried, the special counts were found to be unsupported by the proof ; and it remained to be determined, whether a recovery might not be had on the general count, by treating the contract as at an end; and the intestate's share of the purchase money as having been received by the defendant to the intestate's use. With this intent the cause was put to the jury on the point of actual fraud, of which there was full and ample proof, which, by vitiating the contract in its origin, gave a clear title to a return of the money paid under it. The plaintiff had

3 B

[Pennock v. Freeman.]

shown a sale by the defendant, of a moiety of the land at an advanced price; which, he contended, was the measure of the damages. But the jury were directed, that the price of the land sold by the defendants, could be recovered only on the basis of the contract, of which the recovery would be an affirmance; besides, that the right of the plaintiff's intestate was not specifically attached to the moiety sold, and that enough still remained in the defendant, as a trustee of the legal title, to satisfy the trust; and that he was, therefore, entitled but to the money paid by his intestate, with interest. From this it is apparent, that though evidence of the re-sale, and the price received, was irrelevant, it was not sufficient to influence the verdict, which was right upon the merits.

There are minor points which deserve but a cursory notice.

Against a right of action dependent on the existence of a secret fraud, the statute of limitations runs but from the period of discovery: and though more than time enough to complete the bar had elapsed between the receipt of the money and the institution of the suit, it did not appear that a sufficient time had intervened between the latter, and the discovery of the fraud which annulled the contract and entitled the intestate or his representative to repetition of the purchase money. On this ground the defence on the statute of limitations was put to the jury, and it seems to us properly disposed of in the verdict. To the objection that the proof did not support the general count, in which the money is laid to have been received to the use of the administrator, and not of the intestate; it is a sufficient answer, that the point was not made at the trial, or in time to give the plaintiff an opportunity to have the discrepance removed by an amendment. As to the objection that the verdict was taken generally, and not on the count which was the actual basis of the recovery; it is enough to say, that whatever effect that might have on a motion in arrest of judgment for faultiness of a particular count, it is certainly not a valid reason for a new trial.

The exceptions to evidence are not sustained. By the provisions of the forty-second rule of the court, the deposition of *Daniel Moore* was properly received, even without proof that he had been served with a *subpœna*; as it was conceded that he resided more than forty miles from the place of trial; and his testimony was not secondary to that of the other witness called to prove the same fact. In like manner the deposition of *Mary Moran*, taken on a joint and several commission to the state of Delaware, was properly received, though the commissioner nominated by the defendant did not attend at the execution of it. The known character and standing of the absent commissioner forbid a suspicion that he was purposely out of the way; but it must be apparent that if the absence of a commissioner were sufficient to stop the proceeding, a joinder in the commission might always be used to defeat the object of it. But there was no deficiency of authority. The commission being both joint and several, and therefore providing for the very contingency that actually hap-

[Pennock v. Freeman.]

pened, was well executed *ex parte;* and as all the interrogatories appear to have been answered, there is no cause on this or any other ground to disturb the verdict.

Judgment affirmed.