# Insurance Co. *v.* Union Canal Co.

## [January, 1843.]

Equity disregards preferences which cannot be enforced at law, wherever it has exclusive control of the fund on which they seem to act; and it respects them only where to do otherwise would merely turn the party around to another tribunal.

A party cannot have the aid of a chancellor in executing a contract, when by his own laches the rights of third persons, without notice, have intervened, which will be prejudiced by the action asked for.

Though an agreement which is to be perfected by the execution of an instrument is among the few exceptions to the rule that equity does not decree specific performance of a contract relating exclusively to a personal chattel, it is nevertheless open to all the objections that could, in equal circumstances, be made to the execution of a contract for the purchase of lands; and against a bill to enforce such a purchase, a delay of fifteen years would be decisive.

If a mistake exist, not in an instrument which is intended to give effect to a preliminary agreement, but in the agreement itself, and it is shown to have been produced by ignorance of a material *fact*, equity will relieve according to the nature of the case; but if the agreement was not founded on such mistake, equity will not decree another security to be given, different from that which had been agreed upon, or treat the case as if the other security had been actually executed.

The 26th section of the act incorporating the Union Canal Company authorized them "to raise by way of loan, from any individuals or bodies corporate, on such terms or conditions as they might think fit, such sums of money as they might from time to time find expedient, for the completion of the objects aforesaid, upon the credit of the capital stock and incorpora-

[Insurance Co. *v.* Union Canal Co.]

tion, including the net proceeds and avails of the lottery, and tolls and profits of the same; *and for the fulfilment of the terms and conditions of any such loan, to mortgage any part or the whole of their property, tolls, profits, or estate whatever.*" In pursuance of this power, the company resolved to borrow 550,000 dollars, and pledged, for the redemption of the loan, their works, accomplished or to be accomplished, &c.; and the complainants lent them money on the terms indicated, but instead of insisting on a formal mortgage, took a certificate, with a marginal memorandum, which bore that certain funds were pledged for its redemption by the resolution referred to. *Held,* that this was not a mortgage within the meaning of the act, and that after the lapse of fifteen years, intervening creditors having been induced, by the complainants' omission to exact a mortgage, to advance money on the credit of the funds, a chancellor would not entertain a bill to execute the contract between the complainants and the company, by converting it into a mortgage under the act of assembly.

In Equity. Bill for specific performance, by the Insurance Company of North America *et al.* against the Union Canal Company *et al.*

The opinion of the court was delivered by

Gibson, C. J.—I am asked to compel the company to execute a mortgage of its works to the complainants, or declare the latter to be entitled to a preference under the mortgage executed to Mr. Roberts in trust for the general creditors; to decree that the company pay the complainants the whole of their principal and interest in preference to any other class of its creditors; that it come to an account of the tolls received, and apply the tolls which may accrue to the interest due to the complainants; that it be restrained, in the mean time, from increasing the dimensions of its canal, or suffering any incumbrance on its property, or from applying its resources to any other object than the redemption of the complainants' loan. These prayers for different forms of relief are founded on the supposed right of the complainants to be preferred to the subsequent loan-holders, and this right, whatever it may be, depends on the twenty-sixth section of the act of incorporation, which authorized the company " to raise by way of loan, from any individuals or bodies corporate, on

[Insurance Co. *v.* Union Canal Co.]

such terms or conditions as they might think fit, such sums of money as they might, from time to time, find expedient for the completion of the objects aforesaid, upon the credit of the capital stock and incorporation, including the net proceeds and avails of the lottery, and tolls and profits of the same; and for the fulfilment of the terms and conditions of any such loan, to mortgage any part or the whole of their property, tolls, profits or estate whatever." It will be perceived from this, that the instrument prescribed to fulfil the terms of the agreement, and thus secure a preference, was to be a mortgage; and that unless the complainants are legal or equitable mortgagees, they are not entitled, by force of the statute, to any preference whatever.

In pursuance of its power, the company resolved to borrow 550,000 dollars, and pledge, for the redemption of the loan, beside the avails of its lottery, its works, accomplished or to be accomplished, as well as the tolls arising from them; and an advertisement inviting subscriptions on those terms, was inserted in the newspapers of the city. The complainants, who are the subscribers to this original loan, consequently lent their money on the terms indicated, but did not, as they might have done, insist upon a formal mortgage. Instead of that, they took a certificate with a marginal memorandum, which bore that certain funds were pledged for its redemption, by the resolution referred to; and this certificate with its memorandum is said to be a mortgage within the purview of the act.

The legal effect of its terms is certainly not that of a mortgage, but, if any thing at all, that of an agreement for a mortgage; and it is treated as such by the complainants in their bill, for they pray specifically for the execution of a formal instrument, which the certificate is, by the nature of the relief sought, confessed not to be. It is doubtless evidence of the terms and conditions of the loan; but it is not the instrument prescribed by the statute for the fulfilment of them. No more is contained in the body of it

[Insurance Co. *v.* Union Canal Co.]

than an acknowledgment of the debt; and if any thing makes it a mortgage, it must be the marginal note. But the word mortgage has a technical and distinctive meaning; and the legislature must be supposed to have used it advisedly, as they are supposed to know the legal import of their own language. They doubtless meant an instrument of mortgage, containing apt and proper words; and such as could be enforced by a court of law, for the chancery powers since vested in the judiciary were, at that time, neither given nor contemplated; in a word, such an instrument as would be recognised to be a mortgage both by lawyers and laymen. Grant that it might have been doubted whether the *scire facias* prescribed by the statute of 1705, for a mortgage of land, would lie on a mortgage of the chattel interest directed to be hypothecated by the act of incorporation. But when the legislature gave the power to execute a mortgage, they impliedly gave whatever remedy should be necessary to enforce it, and none so proper as the one used in analogous cases. By force of the power to be implied from this, a court of law might doubtless have issued a writ of sequestration in execution of a judgment on a mortgage of the tolls, such as has since been provided for judgments against corporations by express enactment. But no lawyer would have attempted to support a *scire facias* on the marginal note of one of these certificates, any more than he would have attempted to support it on the equitable mortgage by deposit of title deeds.*

Indeed such a deposit, importing, as it does, a parol agreement for a mortgage of land specifically enforceable notwithstanding the statute of frauds, very closely resembles this marginal note, which, according to its most ex-

---

* An equitable mortgage by delivery of the title papers to the alleged mortgagee, is no more than a mortgage by parol, and as such cannot be sustained in Pennsylvania. *Shitz* v. *Dieffenbach*, 3 Barr 233; *Bowers* v. *Oyster*, 3 Penn. R. 240.

tended interpretation, imports no more than the existence
of a loan on the credit of a security to be executed: and it
therefore becomes very material to inquire whether, after
the lapse of fifteen years, equity will enforce such an agree-
ment against subsequent lenders, who have been induced
to advance their money, for the benefit of the complainants
by their supineness.

The case of *Hunt* v. *Rousmaniere* (8 Peters, 1) is to
the point. It was held, that if a mistake exist, not in the
instrument which is intended to give effect to the agree-
ment, but in the agreement itself, and it is shown to have
been produced by ignorance of a material fact,* equity will
relieve according to the nature of the case; but that if the
agreement was not founded on such mistake, and if it was
executed in strict conformity to itself, equity would not
decree another security to be given different from that
which had been agreed on, or treat the case as if the other
security had been actually executed. In the case before
us, it is not pretended that there was any mistake of fact
either in respect to the agreement or the instrument which
the parties treated as an execution of it. The word mort-
gage is not to be found in the resolution to borrow, or the
proposals for subscriptions; nor does it occur on the mar-
gin of the certificate. Why then suppose that they con-
templated the execution of a mortgage at all? The com-
plainants were at liberty to contract on the basis of a less
security than the one authorized by the act of incorpora-
tion: and if they thought proper to advance their money
with their eyes open to the fact, that the thing pledged for
its repayment was incapable of being transferred to their
possession, it is too late for them to come here for relief
from their misapprehension of its consequences. There is
an essential difference between a mortgage and a pawn, as
regards the duration of the time of redemption; and as the
latter must be attended by a delivery of the thing, there

* Jenks v. Fritz, 7 W. & S. 201.

[ Insurance Co. *v.* Union Canal Co. ]

certainly is a formal one of importance as regards the means of enforcement; consequently, where parties have used an ambiguous phrase to indicate the one or the other of them, the ambiguity cannot be cleared up to the disadvantage of those who have been induced to lend their money on a particular interpretation of the meaning. If the one gave, and the other took, the instrument which was understood by them to be a full execution of the agreement, they took the chance as to its legal effect. A mistake about that, would be a mistake about matter of law, which is not a ground of relief.

Take it, however, that the certificate was not intended to be the consummation of the agreement, but that the parties still looked to the further security of a mortgage: would equity decree it after so great a lapse of time, to the exclusion of subsequent lenders, equally, if not more meritorious? Though an agreement which is to be perfected by the execution of an instrument, is among the few exceptions to the rule, that equity does not decree specific performance of a contract relating exclusively to a personal chattel, it is nevertheless open to all the objections that could, in equal circumstances, be made to the execution of a contract for the purchase of land; and against a bill to enforce such a purchase, a delay of fifteen years would be decisive. But that is not all. The complainants were at liberty to insist on a mortgage, or waive it: but having taken a security which is not a mortgage, I know of no principle which would justify me in executing this agreement to the prejudice of intervening interests. A chancellor never exercises his discretionary power to the detriment of third persons; and hence, in *Orby* v. *Trigg*, (9 Mod. 2, 3) where there was a covenant to let a mortgagee have the estate in case it was to be sold, he was not allowed to claim it to the prejudice of an intervening purchaser without notice, or to the prejudice of the heir, after the lapse of a considerable time, in which he might have done so. The

[Insurance Co. *v.* Union Canal Co.]

same principle in *Powell* v. *Hankey*, (2 P. Wm. 82.) The subsequent creditors, in this case, are peculiarly meritorious. Had they not, by reason of the complainants' omission to exact a mortgage, been induced to advance their money on the credit of the fund as an unappropriated one, the company's works would have remained unproductive, and the certificates worthless; so that the subsequent lenders stand in relation to their predecessors very much as their predecessors stood in relation to the company. It was their money which made the property what it is, and prevented the previous investments in the stock, or in the loan from being a total loss. And this they did without notice of previous loans. It is not too much to presume, that the complainants contemplated the necessity of further assistance, and purposely left the pledge an open one, in order to let in subsequent lenders on the same footing. But whatever the design, in the first instance, it is enough that they have put their own interpretation on the contract by accepting an instrument as an execution of it, which is not a mortgage in form or effect; and that they remained ostensibly satisfied with it for fifteen years, while others were lending their money for their benefit, on the credit of the same pledge. Even were the contract indisputably an agreement for a mortgage originally, I would not feel myself at liberty, under the circumstances, to decree it specifically; and what title to relief have the complainants on any other ground?

They claim a right, by force of the certificates, as evidence of a naked pledge, to be declared preferred creditors under the trust in the mortgage to Mr. Roberts. But if they have not the means of enforcing their supposed priority at law, they cannot enforce it in equity, which considers equality to be the nearest practicable approach to pure justice. The principle is most frequently met with in the distribution of equitable assets, but is not peculiar to it. Equity disregards preferences which could not be enforced

[ Insurance Co. *v.* Union Canal Co. ]

at law, wherever it has the exclusive control of the fund; and it respects them only where to do otherwise would merely turn the party round to another tribunal. This is forcibly exemplified in *Child* v. *Stephens*, (1 Vern. 101) a case which has been cited in the course of the argument. The owner of land encumbered with judgments, statutes and mortgages, had subjected it to the payment of his debts. The chancellor directed the real securities to be paid first, and then the bonds and simple contract debts on average. But it being urged that a judgment creditor should have satisfaction before a younger mortgagee, as at law, the chancellor thought it reasonable, yet " left him to get it at law, if he could." (S. C. 1 Eq. Ca. Ab. 141.) The principle does not spring from the essential properties of equitable assets, but is applied to them merely because they are not to be reached without the assistance of a chancellor. How else is this trust fund to be reached? These parties have each a pledge without a legal preference, and the complainants call on me not only to help them to the fund, but to save them first. If they can enforce their pledge at law, well and good: if they cannot, they must be content to come in *pari passu*. Let the bill be dismissed.*

* The specific performance of a contract in equity is not of absolute right in the party asking it, but of sound discretion in the court. *Pennock* v. *Freeman*, 1 Watts, 408. Hence, it requires a much less strength of case on the part of a defendant to resist a bill to perform a contract, than it does on the part of a plaintiff to maintain a bill to enforce a specific performance. *Dalzell* v. *Crawford*, 2 Penn. L. J. 17; S. C. 1 Pars. Eq. Cases, 37; *Farley* v. *Stokes*, Ibid. 429. On a bill to require the specific performance of a written contract, although the subject and import of the contract are clear, so that there is no necessity to resort to evidence for its construction, yet if the defendants can show any circumstances, *dehors*, independent of the writing, making it inequitable to interpose for the purpose of a specific performance, a court of equity having satisfactory information on the subject will not interpose. *Ibid.* Where no time is fixed in the contract for its final completion, it ought to be perfected in such time as the court, having regard to all the circumstances existing in a given case, will regard as just and reasonable: a court of equity will not exercise its power for the specific performance of a contract where a party has slept on his rights: diligence is necessary to call the court into action; and where it does not exist, equity will not lend its assistance. *Parrish* v. *Koons*, 1 Pars. Eq. Cases, 79.