# Brown *v.* Pitcairn, Appellant.

|  |  |
|---|---|
| 148 | 387 |
| 202 | ¹648 |

*Equity—Specific performance—False representations inducing contract for sale of land.*

Specific performance is of grace and not of right.

" He who comes into equity must do so with clean hands," or as otherwise expressed, " he that hath committed iniquity shall not have equity." It necessarily follows from these and other cardinal principles that one who asks specific performance of a contract, in the procurement of which he has practiced deceit, is always an unwelcome suitor in a court of equity. It is well settled that though a contract is valid at law, equity will not enforce it specifically, unless the transaction be free from fraud or surprise.

A much less degree of proof is required to induce a chancellor to refuse specific performance of a contract for the sale of land than is required to induce him to reform it or to set it aside.

The evidence established the fact that a contract for the sale of land was procured by deceitful misrepresentations made by and on behalf of the plaintiff for the purpose of securing the property, which he desired to use for a blacksmith shop, but which he induced defendant's agent to believe he intended to use for the erection of dwelling-houses. On learning the use to which plaintiff intended to put the property, defendant refused to carry out the contract and plaintiff filed a bill.

*Held*, that under such a state of a facts a decree for specific performance should be refused.

*Equity practice—Parties—Decree including wife of defendant, who was not a party to the bill, erroneous.*

A decree for specific performance which includes the wife of the defendant, who was not a party to the proceeding, is erroneous.

Argued Jan. 14, 1892.   Appeal, No. 9, Jan. T., 1892, by defendant, John Pitcairn, from decree of C. P. No. 3, Phila. Co., Dec. T., 1889, No. 398, for plaintiff, Michael Brown.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill to enforce specific performance of contract for sale of real estate.

The bill was filed against John Pitcairn alone.

Before James Penn MacCain, Esq., the master, to whom the case was referred, it appeared that plaintiff wanted a lot on which to erect a blacksmith shop.   His friend, Byers, was sent by him to B. F. Glenn & Sons, real estate agents, who had been intrusted by defendant with the sale of a lot belonging to him. Byers concealed the object for which the lot was wanted.   He was told that defendant wished to sell to some one who would improve, and thus benefit the adjoining property.   Plans were sketched to show how dwellings would be built on the lot; there was a conflict of testimony as to whether plaintiff or Byers for him agreed to build dwellings.   Plaintiff told Glenn that he was employed at the Baldwin Locomotive Works, which was false, and Byers confirmed the story.   Subsequently an agreement of sale was executed.   This agreement contained no promises or agreements as to the character of the buildings to be erected.   After the signing of the agreement plaintiff disclosed his purpose of erecting a blacksmith shop, and defendant refused to execute a deed.   The facts are further stated in the opinion of the Supreme Court.

The master recommended a decree that defendant and his wife be directed to execute a deed for one half the property (it having been shown that defendant owned only a one half interest therein), on payment of one half the purchase money by plaintiff.

Exceptions were filed to the report of the master in finding as a fact that no promises or agreements were made by plaintiff inducing the agreement of sale as to the purpose for which he would use the premises which he proposed to buy, and that the agreement contained within itself everything that either party was bound to observe [1–5]; because the master failed to find that the plaintiff was guilty of a fraud in obtaining the contract,

intended to deceive the defendant as to the character of the buildings to be erected, and in obtaining the contract violated good conscience, good faith and fair dealing [6–8]; because the master failed to find that as matter of law the plaintiff was not entitled to any relief in equity [9]; because the master reported a decree that defendant and wife convey all their undivided one half interest in the property in question to plaintiff, and pay the costs of this proceeding [10]; because the master failed to report a decree that the plaintiff's bill be dismissed and that plaintiff pay the costs. [11]

These exceptions having been dismissed by the court, no opinion being filed, and the decree in the form recommended by the master having been entered, defendant appealed.

*Errors assigned* were, (1–11) the dismissing of the above exceptions, quoting the exceptions; (12) because the court erred in confirming the report of the master.

*Sheldon Potter* and *Leoni Melick*, for appellant, argued that a written agreement may be proved to have been executed in consideration of a parol promise, citing, Campbell v. McClenachan, 6 S. & R. 171; Weaver v. Wood, 9 Pa. 220; Powelton Coal Co. v. McShain, 75 Pa. 238; Hurst v. Kirkbride, cited in 1 Binn. 616; Shughart v. Moore, 78 Pa. 469; Graver v. Scott, 80 Pa. 88; Spencer v. Colt, 89 Pa. 314; Renshaw v. Gans, 7 Pa. 118; Walker v. France, 112 Pa. 203; Ferguson v. Rafferty, 128 Pa. 337; Miller v. Fichthorn, 31 Pa. 253; Hart v. Carroll, 85 Pa. 508.

That the testimony regarding the parol agreement came up to the legal standard necessary to establish such agreement: Spencer v. Colt, 89 Pa. 318; Ferguson v. Rafferty, 128 Pa. 356; Piersol v. Neill, 63 Pa. 420; Henderson v. Hays, 2 Watts, 148; Campbell v. Spencer, 2 Binn. 129; Brady's Ap., 66 Pa. 277; Orne v. Coal Co., 114 Pa. 172.

Decrees in equity for specific execution are not matter of right but of grace: Weise's Ap., 72 Pa. 351; Datz v. Phillips, 26 W. N. C. 512.

*Michael J. Ryan*, for appellee.—The master found as a fact that there was no verbal agreement which induced the signing of the written agreement. The finding of facts by a master, sanctioned by the approval of the court, will not be set aside

except for plain error: Kisor's Ap., 62 Pa. 428; Stocker v. Hutter, 134 Pa. 19; Kutz's Ap., 100 Pa. 75.

Such an agreement, if made at all, was made not at the time of the execution, but several days prior thereto; hence it cannot be invoked to modify the written contract: Greenawalt v. Kohne, 85 Pa. 375; School Furn. Co. v. Warsaw School District, 130 Pa. 76; Boyd v. Breece, 3 Phila. 206; Callan v. Lukens, 89 Pa. 134; Cullmans v. Lindsay, 114 Pa. 170; Phillips v. Meily, 106 Pa. 536; Thomas v. Loose, 114 Pa. 35.

OPINION BY MR. JUSTICE STERRETT, April 11, 1892:

In drawing the conclusions on which this decree is based, the learned master and court below appear to have attached little, if any, importance to principles of equity, which ought to have controlling effect in cases like this, viz.: He who comes into equity must do so with clean hands, or, as otherwise expressed, "He that hath committed iniquity shall not have equity:" 1 Pomeroy's Equity Jur. 434–443; Bispham's Equity, 60–62. Specific performance is of grace, and not of right: Pennock v. Freeman, 1 Watts, 409; Henderson v. Hays, 2 Watts, 148; Orne v. Kittanning Coal Co., 114 Pa. 172; Datz v. Phillips, 26 W. N. 512.

It necessarily follows, from these and other cardinal principles, that one who asks specific performance of a contract, in the procurement of which he has practiced deceit, is always an unwelcome suitor in a court of equity.

The circumstances, leading up to the execution of the contract in question, are so fully set forth in the master's report, that brief reference to some of the more salient points will be sufficient.

After referring to the fact that Brown testified he sent Byers to the office of Glenn & Son, defendant's agents for sale of the property, to make inquiry in regard thereto; also, to what was suggested by Byers as to Brown's intention to improve the lot by erecting thereon four side-yard houses, etc., and the discrepancy between the testimony of Brown and that of Byers, as to what occurred prior to execution of the contract, the learned master says: "Brown certainly wanted this place for that single purpose, and that was the purpose he had in view when he commenced negotiations looking to the ultimate pur-

chase of this lot." That purpose, as stated by the master, in same connection, was as a location for a blacksmith shop.

Again, after referring to Brown's assertion that he never told Glenn & Son what he wanted the lot for, the master says : " But all the evidence given by plaintiff shows dwelling-houses were discussed, and sketches made to show how such dwellings could be built on the lot, either to utilize all of it, or make it pay, or command a larger price," etc., and then concludes thus : " There certainly must have been a prearranged understanding between Brown and his friend Byers about the Baldwin story ; they both made use of it at different times ; they knew it was untrue, and they certainly had some object in view. That object was to deceive Glenn ; and Brown, being a blacksmith, would, by his appearance, give color to the statement, and induce Glenn not to inquire further into his business."

This finding of fact, that falsehood and deceit were resorted to by the plaintiff and his go-between, for the purpose of misleading defendants' agents, and thus procuring the contract of sale, is fully warranted by the evidence.

A few days after the contract was signed, Glenn & Son addressed the following self-explanatory letter to Brown : " We have been told that you have an intention to use the lot . . . . for a blacksmith shop. As you had stated to us that you would build on it four side-yard dwellings, and the sale was made to you with that understanding, you can see our principals would not be willing to convey the property to you for the purpose named, that is, to be used for a blacksmith shop or other objectionable purpose. We trust that our informant has been mistaken, and we will be glad to hear from you in relation to the matter."

Brown happened to call at Glenn's office before this letter was mailed, and it was read to him. When charged by the writer of the letter with having deceived him, Brown, instead of denying the accusation said, " he had bought the lot and had a right to have it, and meant to try and get it anyhow, and that there was no need of bad feeling between them about it." Further reference to the evidence is unnecessary. It clearly establishes the fact that the contract was procured by deceitful misrepresentations, made by and on behalf of plaintiff, for the purpose of securing the property.

That fact, as we have seen, is substantially found by the master; but, in summing up his findings of fact, it appears to have been omitted, presumably, for the reason that it was not regarded as necessary to a proper disposition of the case. The substance of his third, fifth and sixth findings is that, at the time the agreement was signed no promises were made or agreement entered into between Brown and those who represented the defendant; that Brown did not then or at any time "make any promises to, or enter into any agreements with, Robert Glenn or any other person as to what he would erect on the property he proposed to buy."

These findings are not inconsistent with the fact that plaintiff and his friend Byers practiced falsehood and deceit in procuring the contract, as above stated. If the defence had been grounded solely on reformation of the contract by incorporating therein a building restriction alleged to have been omitted by accident or mistake, etc., the conclusion drawn by the learned master and court below would have been correct; but it is one thing to furnish such proof as will move a chancellor to reform a contract for the sale of land, and quite another to prove such unfairness or deception in its procurement as will induce him to withhold his aid and thus refuse specific performance of the tainted contract.

There is also a marked difference between that degree of unfairness which will induce a chancellor to set aside a contract, and that which will induce him to withhold his aid in enforcing it: Cathcart v. Robinson, 5 Peters, 276. It is there said: "A defendant may resist a bill for specific performance by showing that, under the circumstances, the plaintiff is not entitled to the relief he asks. Omission or mistake in the agreement, or that it is unconscientious or unreasonable; or that there has been concealment, misrepresentation or any unfairness, are enumerated among the causes which will induce the court to refuse its aid."

It is well settled that, though a contract is valid at law, equity will not enforce it specifically unless the transaction be free from fraud or surprise. As was said in Orne v. Kittanning Coal Co., supra: "The doors are shut against one who, in his prior conduct in the very subject-matter at issue, has violated good conscience, good faith or fair dealing." All these

were done by the plaintiff in the procurement of the contract which he asked the court below to enforce.  He was unworthy of its aid, and his bill should have been dismissed.  The decree is also erroneous, in that it includes defendant's wife, who does not appear to have been a party to the proceeding.

Decree reversed and bill dismissed with costs to be paid by the plaintiff.