Edelman et al., Appellants, v. Latshaw et al.

*Equity—Jurisdiction—Fraud—Sale.*

A bill in equity cannot be sustained to compel the reconveyance of shares of stock sold to defendant under fraudulent representations made by him, where the relief sought is merely compensation in damages. In such a case there is an adequate remedy at law.

A mere misstatement by a buyer of his motive in purchasing, or in limiting the amount of his offer, is not ground for equitable relief.

Argued Jan. 30, 1894. Appeal, No. 79, July T. 1893, by plaintiff, Amelia Edelman et al., from decree of C. P. Montgomery Co., Dec. T., 1891, No. 2, dismissing bill in equity against S. B. Latshaw and N. Y. & Middle Coal Field R. R. & Coal Co., defendants. Before GREEN, WILLIAMS, McCOLLUM DEAN and FELL, JJ.

Bill to compel reassignment of shares of stock.

The case was referred to Louis M. Childs, Esq., as master, who reported in favor of dismissing the bill.

Exceptions to the master's report were dismissed by the court, in the following opinion, by WEAND, J.:

" This bill is brought for the cancellation of an executed contract of sale of certain shares of stock bought by the plaintiffs at a public sale and afterwards sold to the defendant Latshaw. The allegation is that Latshaw induced plaintiffs to sell him the stocks by false representations as to their value and as to his object in buying. The stocks consisted of 750 shares of the New York & Middle Coal Field Railroad & Coal Co., 1500 shares of the Arion Silver Mining Co., and 500 shares of the Montana Gold & Silver Mining Co., and had belonged to one Daniel Latshaw, deceased, the father of defendant, and were bought by plaintiffs at an executor's sale of decedent's effects, held March, 1887, for $11.40.

"After the sale, defendant Latshaw, who was one of the executors, remarked to the purchaser that the stocks were of no value, and that he did not know where the offices of the companies were located. In September, 1891, one C. R. Lindsay, who previously had been connected as secretary with the New York & Middle Coal Field Railroad &'Coal Co., wrote to Daniel Latshaw, not knowing he was dead, inquiring whether he still held

any stock in said company, and asking the lowest price he would take for it, stating also that the stock had no market value but that he could use it at two dollars per share. This letter was received and answered by defendant S. B. Latshaw, who then wrote to Saylor, one of the plaintiffs, asking whether he still held the stocks bought at the sale, and what he would take for them. A correspondence was then carried on between defendant and Saylor, in which Latshaw stated that he believed the stocks had no intrinsic value, and that he could find no offices of the company, and offering twenty-five dollars for the lot. The parties, plaintiff and defendant, afterward met at Pottstown, when the stocks mentioned were sold to Latshaw for fifty dollars. It is alleged by plaintiffs that at the time of transfer Latshaw was asked by Saylor, ' What is there in this stock that you appear so anxious to have it? You laughed at me when I bought it,' and that he replied, ' I want it as a relic of my father's effects; it has no value, and no office or officers of the company,' and that these representations were the inducement to sell them to him. At this time Latshaw had Lindsay's offer of two dollars per share for the 750 shares of railroad and coal company stock. The other stocks had no market value, nor does it appear that the companies are still in existence.

" The plaintiffs could only find certificates for 600 shares of the railroad and coal company stock, but the assignment to Latshaw covered them all; but because of the missing certificates Latshaw could only realize on 600 shares of the railroad and coal company stock, for which he received $1,200 from Lindsay. The bill prays for a reassignment of said shares and for an injunction to prevent further transfers.

" The master dismissed the bill for want of jurisdiction, holding that there was a complete and adequate remedy at law. Exceptions were filed by plaintiffs.

" In McGowin v. Remington, 12 Pa. 56, Judge BELL, in speaking of cases for the recovery of chattels by a proceeding in equity, said: ' The precise ground of this jurisdiction is said to be the same as that upon which the specific performance of an agreement is enforced, namely, that fruition of the thing, the subject of the agreement, is the object, the failure of which would be but illy supplied by an award of damages; and that chancery always interferes where, from the nature of the sub-

ject, or the immediate object of the parties, no convenient measure of damages can be ascertained, or where nothing could answer the justice of the case but the performance of a contract in specie.'

"There are exceptions to the well settled principles of law that equity will not enforce specific execution of contracts relating to chattels, as was ruled in Foll's Appeal, 91 Pa. 434; Goodwin Gas, Stove and Meter Co.'s Appeal, 117 Pa. 514, and other cases. But we fail to find that plaintiffs have brought themselves within any of the excepted cases. To the plaintiffs these stocks have no special or peculiar value, and were not purchased for any special purpose. The only object of their purchase was to make money for them, and hence their only value to plaintiffs is what might be realized from a resale. When they bought, plaintiffs thought they were worthless, and did not even know that the companies had an existence; and, therefore, if there was nothing else in the case but a mere breach of contract, plaintiffs would have a complete and ample remedy at law for the loss sustained, if any.

"This damage could be readily ascertained, as appears by the testimony in the case. It is no answer to say that the stocks other than the railroad and coal company stock have no market value, and that the damage on that account could not be ascertained, for it is apparent that as to them defendant made no fraudulent representation, for he knew nothing of their value, nor do the plaintiffs; and were it not for the railroad and coal company stock, this suit never would have been brought. In the language of the master: 'The wrong, therefore, against which they complain is the acquirement of the coal stock from them for a nominal price. If they paid the full value of the coal stock they will, under their own showing, be entirely compensated for all damages consequent upon any wrong of the defendant.'

"Can the bill be sustained upon the ground that the defendant Latshaw was a trustee ex maleficio, or upon the ground that he had practiced a fraud in procuring the stocks?

"He occupied no fiduciary relation to the plaintiffs. What he said at the executors' sale had nothing to do with plaintiffs' purchase, and after that he was acting towards them as an individual, and their relations were simply that of vendor and

vendee.  He was not bound to disclose his knowledge of the value of the stocks, provided he did not make fraudulent representations or suppress the truth when it was his duty to speak. Plaintiffs had opportunities for informing themselves of the condition of the various companies, but they appeared to have taken but little interest in the matter.  Was he guilty of such fraud as will entitle the plaintiffs to the relief asked for?  It is true that a confidential relation is not necessary to establish a constructive trust, and that a trust may arise from actual fraud; but this fraud alone will not be sufficient to warrant relief, unless the parties relied upon the fraudulent representations which were the inducements to their contract.

"In Adams's Equity, 5 Am. Ed., *174, it is said: 'The jurisdiction for rescission and cancellation arises where a transaction is vitiated by illegality or fraud, or by reason of its having been carried on in ignorance or mistake of facts material to its operation.  And it is exercised . . . . for setting aside executed conveyances or other impeachable transactions, where it is necessary to replace the parties in statu quo.  And in such cases, though pecuniary damages might be in some sense a remedy, yet if fraud be complained of there is jurisdiction in chancery.'  The author instances amongst cases of this character the procuring contracts to be made or acts to be done by means of willful misrepresentation, either express or implied, etc.  But to constitute a case of this kind there must be a representation, express or implied, within the knowledge of the party making it, reasonably relied on by the other party, and constituting a material inducement to his contract or act. Tested by this rule, have the plaintiffs a standing in a court of equity?

"According to the evidence the coal company at all times had an office in Philadelphia, which was given in the city directory; and it further appears that some time after the purchase by plaintiffs, Mr. Edelman visited New York to inquire about the stocks, having with him one of the certificates for the coal company stock.  It thus appears that plaintiffs had means of information open to them, and that they investigated the matter.  How can it be said, therefore, that they relied on Mr. Latshaw's representations as to value rather than on their own knowledge.

" In Clapham v. Shillito, 7 Beavan, 146, it was ruled that ' cases had frequently occurred in which, upon entering into contracts, misrepresentations made by one party have not been in any degree relied on by the other party. If the party to whom the representations were made himself resorted to the proper means of verification before he entered into the contract, it may appear that he relied on the result of his own investigation and inquiry and not upon the representations made to him by the other party.'

" In the case under consideration plaintiffs held the stock for four years, had made investigation, and must have been convinced without any representations from Latshaw that the stocks were worthless.

" It is also stated in Adams's Equity, 356, that a mere misstatement by the buyer of his motive in purchasing or in limiting the amount of his offer, will not bring the case within the class of cases in which equity will grant relief. And for this he cites Vernon v. Keys, 12 East, 632, where the vendee ' falsely and deceitfully represented to the vendor that he was about to enter into partnership in the same trade with other persons whose names he would not disclose, and that these persons would not consent to his giving the plaintiff more for his interest than a certain sum; whereas, in truth, neither A and B, with whom he was then about to enter into partnership, nor any other intended partners of his, had refused to give more than that sum, but had then agreed with the defendant that he should make the best terms he could with the plaintiff, and would have given him a larger sum. And in fact the defendant charged them with a larger price in account for the purchase of plaintiff's interest.' Held, that an action on the case did not lie for this false and deceitful representation by the bidder of the seller's probabilities of getting a better price for his property, for it was either a mere false representation or at most a gratis dictum of the bidder upon a matter which he was not under any legal obligation to the seller to disclose with accuracy, and on which it was the folly of the seller to rely.

" There is another reason which is fatal to the plaintiffs' contention. It is apparent that plaintiffs are seeking to recover damages for their loss, and not to recover the specific chattels sold. It is not alleged nor shown that the stocks have to them

any especial value apart from their money value, and plaintiffs will be placed in statu quo when they are paid what they have lost in money.   In Mackintosh v. Tracy, 4 Brews. 59, it was held that 'in cases of fraud, especially where the fraud relates to sales of personal chattels, and where the 'relief sought is merely compensation in damages, if the remedy at law is adequate, relief is not ordinarily granted in equity.'   See also Parsons on Contracts, vol. 2, p. 782."

*Errors assigned* were dismissal of exceptions.

*Charles Hunsicker*, for appellants, cited: Mortland v. Mortland, 151 Pa. 593; Brush Electric Co.'s Ap., 114 Pa. 574; Bierbower's Ap., 107 Pa. 14; Kirkpatrick v. M'Donald, 11 Pa. 387.

*Jacob V. Gotwalts, Hallman & Place* with him, for appellants, cited: Act of June 16, 1836, P. L. 789; Foll's Ap., 91 Pa. 434; Roland v. Bank, 135 Pa. 598; McGowin v. Remington, 12 Pa. 56; Goodwin Gas Stove and Meter Co.'s Ap., 117 Pa. 514; Kauffman's Ap., 55 Pa. 383; Clark's Ap., 62 Pa. 447; Winter's Ap., 61 Pa. 307; Young's Ap., 3 Penny. 463; De La Cuesta v. Ins. Co., 136 Pa. 62.

PER CURIAM, February 12, 1894:

The prayers of the plaintiffs' bill could not be granted even if the plaintiffs had a cause of action cognizable in a court of equity, because the stock sought to be recovered had already been sold, and was at the time the bill was filed held by innocent purchasers.   But if the facts upon which the cause of action was grounded were all true, there was a complete and adequate remedy by an action at law, and for that reason there is no jurisdiction in equity.   The opinion of the learned court below is a sufficient vindication of the correctness of the conclusions reached, and for the reasons therein stated the decree is affirmed.   The contest was only over the coal shares.   There was no real controversy as to the other shares.

The decree of the court below is affirmed and the bill of the plaintiffs is dismissed at the cost of the appellants.