208     380
31 SC   93

## Schimpff, Appellant, *v.* Dime Deposit and Discount Bank.

*Equity—Specific performance—Sale—Stock of corporation.*

A court of equity will not decree specific performance of a contract to sell stock of a corporation where the complainant has delayed for over three years to enforce her rights, with no explanation of the cause of the delay, and the stock in the meantime has more than quadrupled in value. In such a case the complainant's remedy, if she has any, is at law.

Argued Feb. 22, 1904. Appeal, No. 214, Jan. T., 1903, by plaintiff, from decree of C. P. Lackawanna Co., March T., 1901, No. 2, dismissing bill in equity in case of Emilie A. Schimpff v. Dime Deposit and Discount Bank and Martyn J. Stone. Before DEAN, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Bill in equity for specific performance.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*S. B. Price*, for appellant.

*C. Comegys*, for appellees.

PER CURIAM, March 7, 1904:

The plaintiff loaned to Stone, the defendant, on August 22, 1895, $1,000 ; she took from him his personal note, secured by twenty shares of the Dime Deposit and Discount Bank of Scranton. The stock was worth about par, or, at $50.00 per share, $1,000, the face of the note. About two years afterwards, on September 14, 1897, plaintiff asked Stone to sell the stock in her hands to her, and offered $1,600, the amount of the note, with interest, to be deducted, and the balance to be paid Stone, the transaction to be closed when a formal transfer of the stock was made by the bank on its books. The next day the cashier of the bank, when asked to do so, refused to transfer the stock, alleging the bank had a lien against it. At this date Stone owed the bank $3,700, but he also owned 100 shares of stock in addition to the twenty shares in possession of plaintiff. On March 28, 1898, the bank surrendered fifty shares of the stock to Stone and received therefor $1,878, leaving fifty shares still in Stone's hands in addition to the twenty shares in possession of plaintiff. On June 20, 1900, Stone owed the bank $435.16, with interest ; plaintiff offered to pay the bank this sum on a transfer of the stock to her, but the bank refused. On June 16, 1900, Stone tendered the amount of the note, with interest, to plaintiffs, but she refused to accept the money, and on February 7 following filed this bill against both Stone and the bank praying for a specific performance of the contract, that is, a transfer of the certificates for twenty shares of stock. To this bill Stone filed demurrer, which was overruled by the court and he was directed to answer, which he accordingly did, denying that he agreed to sell the stock to plaintiff or that she had any equity on which to base a decree. The court below, after hearing dismissed the bill, mainly on the ground that the contract at best was an executory one, consequently the title to the shares of stock had never passed to plaintiff, and that if the contract was only executory, her remedy was at law, and not by bill for a specific decree.

It is not exactly clear that the contract was executory ; the evidence is quite contradictory. But however this may be, the

decree dismissing the bill was right; the plaintiff had no equity which it would be the exclusive province of a court of equity to enforce. Two years after she made the loan, she alleges she made the contract to purchase the stock, which by no fault of defendant was not carried out, but because the bank had a lien on the stock. She rests contented with her security for the loan for nearly three years, with no explanation of the cause of the delay. Then Stone tendered the amount of his debt with interest and offered to take up the stock; she refused to accept the money. Then six months afterwards she brings this bill praying that he be ordered specifically to perform the contract. In the meantime the stock had gone up to $240 per share or to about $4,800. It has now become a highly speculative transaction on her part; if she ever had a right to a decree for specific performance, it is certainly not after this lapse of time, especially as her debt is far more secure now than it was when she made the loan. There is nothing in the undisputed facts which would move a chancellor to make such a decree as prayed for.

While it is true that in exceptional cases equity will decree the specific performance of a contract for the sale of chattels, such as those enumerated by Judge BELL, in McGowin v. Remington, 12 Pa. 56, it will not so decree, says Beach on Modern Equity and Jurisprudence, p. 640, note 1, when "however strong, clear and emphatic the language of the contract, however plain the right at law, if a specific performance would for any reason cause a result, harsh, inequitable or against good conscience, the court should refuse such a decree and leave the parties to their remedies at law." A decree here to hand over the stock would work a gross hardship to Stone ; it would give to plaintiff stock to the value of $4,800, which she took as security for a loan of $1,000, with no explanation or excuse for her delay in enforcing payment. In such a case equity will simply refuse to move in favor of the speculator, but will leave her to her remedy at law. While we decline to say that on the evidence the contract was merely executory, we do say, that it is one which equity will not enforce by decree for specific performance, therefore, all the assignments of error are overruled, and the decree of the court below dismissing plaintiff's bill is affirmed.