## Spotts v. Eisenhauer, Appellant.

*Equity—Specific performance—Inadequate consideration—Judgment.*

A court of equity will not enforce the specific performance of a contract to purchase a judgment, where it appears that the defendant in the bill agreed to pay $900 for a judgment from which there was no reasonable hope of realizing one dollar. In such a case the plantiff will be left to his remedy at law.

Argued March 6, 1906. Appeal, No. 14, March T., 1905, by defendants, from decree of C. P. Union Co., May T., 1904, No. 2, on bill in equity in case of William H. Spotts, Executor of Henry Eisenhauer et al., v. Semmira Eisenhauer et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

90      SPOTTS *v.* EISENHAUER, Appellant.

Statement of Facts—Opinion of the Court. [31 Pa. Superior Ct.

Bill in equity for specific performance. Before McCLURE, P. J., and J. H. BLIND and HENRY ERNST, associate judges, unlearned in the law.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree for specific performance.

*William H. Hackenberg,* for appellant.—This was the specific performance of an inequitable and unconscionable bargain : Schimpff v. Dime Deposit & Discount Bank, 208 Pa. 380; Friend v. Lamb, 152 Pa. 529; Elbert v. O'Neil, 102 Pa. 302; Diamond State Iron Co. v. Todd, 12 Cent. Repr. 341; Foll's Estate, 91 Pa. 434; Oil Creek R. R. Co. v. Atlantic & Great Western R. R. Co., 57 Pa. 65; Maguire v. Heraty, 163 Pa. 381; Miles v. Stevens, 3 Pa. 21; Freetly v. Barnhart, 51 Pa. 279; Weise's App., 72 Pa. 351; Miller v. Fulmer, 25 Pa. Superior Ct. 106.

*George B. Reimensnyder,* with him *Philip B. Linn,* for appellees.—The sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question. This principle is especially applicable to family arrangements and compromises : Lewallen's Estate, 27 Pa. Superior Ct. 320 ; Weaver's App., 115 Pa. 59 ; Kramer v. Dinsmore, 152 Pa. 264; Ralston v. Ihmsen, 204 Pa. 588.

OPINION BY PORTER, J., May 14, 1906 :

The plaintiffs in this proceeding sought to enforce the specific performance of two contracts. Under the provisions of the first contract Semmira Eisenhauer, one of the defendants, had agreed to resign as executrix of the will of her deceased husband, Henry Eisenhauer, and to waive all right to commissions as said executrix. The court below found as a fact, upon abundantly sufficient and uncontradicted evidence, that Semmira Eisenhauer always had been willing to perform these covenants, and had offered to do so before the bill was filed. It is therefore manifest that as to that contract there was no warrant for the filing of the bill and putting costs upon the de-

fendants. The court further found, upon evidence equally satisfactory, that this contract was entirely distinct from and was concluded before the beginning of the negotiations which resulted in the contract hereinafter referred to. This eliminates the agreement of the executrix to resign and waive her right to commissions from consideration in the present case.

The real question at issue arises out of another contract, relating to the sale of a judgment held by the estate of Henry Eisenhauer against William S. Eisenhauer, his son. William S. Eisenhauer was at the date of the death of his father indebted to the latter to a considerable amount, $900 of which was in the form of a judgment, in the court of common pleas, of Union county. William S. Eisenhauer was insolvent, and the only property, real or personal, possessed by him out of which the money could be made on the judgment held by the estate was a farm upon which that judgment was a lien. The parties plaintiff and defendant met, in December, 1903, and William H. Spotts, acting executor of Henry Eisenhauer, with the consent of the other plaintiffs, the legatees and devisees under the will, agreed to sell the $900 judgment held by the estate against William S. Eisenhauer to Semmira Eisenhauer, his mother, and to release William S. Eisenhauer from liability for his entire indebtedness to the estate, in consideration of which Semmira Eisenhauer agreed to release to the estate $900 out of a legacy of $1,300 which she took under the will of her deceased husband, Henry Eisenhauer, and William S. Eisenhauer agreed to release all his rights as a legatee under the will. There was some delay in the execution of the papers necessary to carry the contract into effect, and about two months later, or early in February, 1904, Semmira Eisenhauer, through her attorney, notified the other parties that her offer was withdrawn and she declined to carry the arrangement into effect. The plaintiffs subsequently filed this bill to compel the specific performance of the contract. The thing which it is proposed to compel Mrs. Eisenhauer to do is to buy from the estate a judgment which it holds against her son, William S. Eisenhauer, who is also the son of the decedent, and pay for that judgment its full face value by releasing $900 of the legacy which she took under the will of her deceased husband. We must not lose sight of the fact that this is not an action

at law for damages for the breach of the contract, nor is it a distribution of the estate of Henry Eisenhauer in the orphans' court; it is a proceeding in equity to specially enforce the contract according to its very terms. What, under the terms of the contract in question, do the plaintiffs propose to give Mrs. Eisenhauer for this $900? A judgment for $900 against William S. Eisenhauer, who it is admitted is and was insolvent, and the only source from which that judgment could possibly be paid is a certain farm upon which the judgment is a lien. The learned judge of the court below after carefully considering the evidence found the following facts: "The farm of William S. Eisenhauer against which the judgment for $900 is a lien is worth about $35.00 per acre, or a total of $3,220. There are two prior liens, one for William H. Hackenberg's use for the sum of $1,900, and one in favor of Susan Fegley for $1,200, making a total of $3,100 of principal debt, on which there is no doubt some interest due—how much we do not know—so that the total amount of liens is in excess of the value of the farm, and as William has no other property, real or personal, out of which to make the money, the enforcement of this contract will entail considerable pecuniary loss upon Mrs. Eisenhauer." The costs on these two judgments which were prior liens would take precedence over the $900 judgment, and, although the learned judge did not find the amount of interest due, the evidence shows that there was $57.00 interest due on the $1,900 judgment. The defendant in the judgments was insolvent and a sheriff's sale would be necessary to produce a fund out of which the judgments could be paid. The farm was worth $3,220, which seem to be a liberal estimate under the evidence, but it is the amount found by the court below; there would first have to be paid out of the proceeds the two prior judgments with their interests and costs; the principal and interest at the time the parties made this contract amounted to $3,157; this would leave $63.00 to pay the costs of the sheriff's sale and the costs upon the two prior judgments; there would not be much left of the $63.00. The truth is that Mrs. Eisenhauer agreed to pay $900 for a judgment, from which she could have no reasonable hope of realizing one dollar. The plaintiffs had an adequate remedy at law, in the form of an action for damages, or they could have raised the

question upon the distribution of the estate of Henry Eisenhauer, in the orphans' court; but they have come into a court of equity and appealed to the conscience of a chancellor, asking that this contract be specifically enforced. There was no change in the situation of the parties between the time the contract was made and the date when they received specific notice that Mrs. Eisenhauer refused to perform.

The learned judge of the court below made the question of the right of plaintiffs to equitable relief turn upon the sufficiency of the consideration to support the contract. There can be no question that the consideration was sufficient to support the contract as a binding obligation in a court of law. The contract related to a sale of personal property and was wholly executory. The sufficiency of the consideration to support the contract was not the determining question in this case. The cases in which equity will decree a specific performance of a contract for the sale of personal property are exceptional, although the power to do so unquestionably exists : McGowin v. Remington, 12 Pa. 56. " When, however strong, clear and emphatic the language of the contract, however plain the right at law, if a specific performance would for any reason cause a result, harsh, inequitable and against good conscience, the court should refuse such a decree and leave the parties to their remedies at law : " Schimpff v. Dime Deposit & Discount Bank, 208 Pa. 380 ; Oil Creek Railroad Company v. Atlantic & Great Western Railroad Company, 57 Pa. 65; Friend v. Lamb, 152 Pa. 529; Freetly v. Barnhart, 51 Pa. 279; Elbert v. O'Neil, 102 Pa. 302; Rennyson v. Rozell, 106 Pa. 407. Mr. Justice CLARK, who spoke for the Supreme Court in the case last above cited, said: " Relief, therefore, is not the absolute right of either party—it is of grace only, and rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of the case. That discretion is, of course, not an arbitrary one, depending upon the mere pleasure of the court, it is controlled by recognized and established rules ; and while no rule may be announced which will be applicable to all cases, in general it may be said, that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice, and that it will be withheld where upon a like view it appears that

it will produce hardship or injustice to either of the parties."
This rule has been recognized in numerous cases: Henderson
v. Hays, 2 Watts, 148; Foll's Appeal, 91 Pa. 434; Maguire
v. Heraty, 163 Pa. 381; Miles v. Stevens, 3 Pa. 21; Weise's
Appeal, 72 Pa. 351; Miller v. Fulmer, 25 Pa. Superior Ct.
106.

We are of opinion that this contract was upon the part of
the widow so exceedingly improvident that a chancellor ought
not to be called upon to enforce it according to its terms; the
parties should be left to their remedy at law.

The decree is reversed and the bill is dismissed at the costs
of the plaintiffs, without prejudice to their right to raise the
same question in an action at law, or upon distribution of the
estate of Henry Eisenhauer in the orphans' court.