## Archbald Coal Co. *v.* Murrin, Appellant.

*Equity—Findings of fact—Evidence — Parol evidence — Writings.*

1. The findings of fact of a court of equity based on sufficient evidence have the force and effect of a verdict of a jury; and where such findings do not depend entirely on oral evidence, but on writings plus oral evidence, they cannot be successfully assailed.

Argued April 13, 1925. Appeal, No. 257, Jan. T., 1923, by defendant, from decree of C. P. Lackawanna Co., Oct. T., 1921, No. 22, for plaintiff on bill in equity, in case of Archbald Coal Co. v. James B. Murrin. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for decree directing defendant to turn over to plaintiff coal lease and restricting its sale or encumbrance. Before MAXEY, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendant appealed.

*Error assigned* was, inter alia, decree, quoting it.

*William J. Fitzgerald,* with him *John P. Kelly,* for appellant.

*Walter L. Hill,* of *Knapp, O'Malley, Hill & Harris,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 27, 1925:

The Ryon and Clark tracts, underlaid with two seams of coal, are contiguous. The Clark or upper vein is the one in controversy. The vein next is the Dunmore. Both veins outcrop on the Ryon and extend into the Clark and other tracts. The Dunmore was leased by plaintiff, with the exclusive right of entry on the Ryon tract. It was operated, however, through a breaker located on plaintiff's other lands held under the Simpson lease. When E. M. Newton, afterward president of plaintiff company, was considering buying into it, or shortly after purchasing, he wished to enlarge the holdings, he met defendant and negotiated for the purchase of his Edgerton tract. This land adjoined plaintiff's lease of the Dunmore and land under the Simpson lease, where the breaker was located; it included the Clark tract above mentioned. But Newton would not buy the Edgerton tract unless he could relocate the breaker on the Ryon and procure a lease of the Clark vein on the Ryon. This piece of land was apparently the door to the Clark vein on all properties, as well as the medium for successfully operating the Dunmore. Defendant, while the negotiations for Edgerton were being carried on, did not own the Clark vein, nor any rights in the Ryon tract, but recognized the desirability of plaintiff's procuring a lease of the Clark vein in connection with his sale of Edgerton, with the right to erect a breaker on the proposed site. Defendant did not make the procurement of such rights a condition precedent to his sale of the Edgerton tract, but he agreed to aid in procuring it, and

he acted as an attorney to secure these rights.  If successful, plaintiff was to reconvey to him 112 acres of his Edgerton tract, or what is known as the Anderson-Dana tract.

Defendant sold his Edgerton properties to plaintiff. At that time the Archbald Consolidated Coal Company was organized by those interested in plaintiff; to it as a holding company was transferred all plaintiff's capital stock.  Defendant received in part payment for the Edgerton tract a note of Newton's for $75,000 with at least a majority of the capital stock of the consolidated company as collateral.

Defendant then secured a lease on the Clark vein in his own name, and at the same time procured for plaintiff in its name a lease on two additional tracts of land. This latter lease, known as Exhibit B, also contained a release by plaintiff of its exclusive right of entry on the Ryon tract.  This had the effect of making the lease of the Clark vein a more valuable independent workable proposition.  Defendant refused to turn it over to plaintiff, hence this proceeding.

While there are conflicting statements as to what really occurred between the parties, appellant has confined his efforts to one question.  He recognizes his agreement with Newton to turn over the Clark lease "at the proper time," but denies any engagement to give it to plaintiff, asserting the Consolidated Company was to receive it.  Placing the title to this property in that company would reinforce the collateral held by defendant as security for his notes; but if placed in plaintiff's hands such protection is immediately lost or badly jeopardized, as will later appear.

Unfortunately for defendant, the court below found as a fact that plaintiff was to receive the lease.  This conclusion did not depend entirely on oral evidence, but on writings plus oral evidence; hence defendant cannot successfully assail it: Glenn v. Trees, 276 Pa. 165.

There is no necessity to comment on any so-called imposition on Newton by defendant. Newton states he was familiar with conditions around these properties, and it is rather begging the question to assert he was unfamiliar with mining terminology and mining usages. The evidence convinces us that Mr. Newton was amply able to take care of himself. The facts however were to be found by the court below, and they have been determined adversely to defendant.

We will quite briefly refer to other material facts. All the capital stock of plaintiff was transferred by the Consolidated Company to a third company or to others. Defendant then instituted in New York state a proceeding wherein he charged Allen, Newton's successor as president of the Consolidated Company, and his associates, with having deliberately transferred all the property and assets of plaintiff to another corporation of like name, with intent to deprive defendant of all possible security accruing by virtue of the pledge of the Archbald Consolidated Company's stock as collateral. He asked a compulsory return of these assets. The New York Court of Appeals found "he [defendant here] in reality was the one injured. By a conspiracy he was deprived of the control of the corporation, which control formed part of the value of the pledge. The action was taken not to benefit the corporation, but to injure the plaintiff and to deprive him of what he was entitled to acquire when the pledge was sold": Murrin v. Archbald Consolidated Coal Co. et al., 232 N. Y. 541, 134 N. E. 563.

At the time defendant sold his Edgerton property to plaintiff he knew its capital stock was owned by the Consolidated Company, and he also knew the Consolidated Company had mortgaged the same stock, and when he received its stock as collateral it carried with it only the equity of redemption in plaintiff's stock. It now appears the mortgage has been foreclosed, and the stock purchased by third persons. If it is a valid sale, the Clark lease went with it as an asset. But if the sale was

collusive and fraudulent, or if it was in violation of the decree of the New York Court, when that decree is made effective this property will be returned to the ownership of the Archbald Consolidated Company; defendant will then be amply protected.   The result of our determination is not adverse to the action of the New York court, but is in aid of its decree, as it places the property in the possession of plaintiff to await the final determination of that court in the litigation there pending.

The assignments of error are overruled, and the decree of the court below is affirmed.