Bishoff, Appellant, *v.* Valley Dairy Co. et al.

126

· Argued October 9, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Frederic W. Miller,* with him *Carl D. Smith,* for appellant.—A defrauded party may elect to rescind and be restored to his former position. Thus if he has been induced to sell personal property he may treat the sale

as void and sue to recover the property. He may also sue in equity for rescission, in which case he may obtain full relief: Wagner v. Fehr, 211 Pa. 435; Thompson v. White, 1 Dall. 424; Cameron v. Trust Co., 292 Pa. 114; Christy v. Sill, 95 Pa. 380.

The uncontradicted evidence and admissions establish incontrovertibly that Weiss acted as agent for the company in the acquisition of the plaintiff's holdings and not for himself.

The plaintiff comes into court with clean hands: Dempster v. Baxmyer, 231 Pa. 28.

*G. Malcolm McDonald,* for appellees.—The findings of fact of the trial judge are sustained by competent legal evidence: Archbald Coal Co. v. Murrin, 284 Pa. 69; Miller v. Savings & Trust Co., 285 Pa. 472; Lafean v. Carmel Co., 271 Pa. 276; Bannon v. Bank, 14 Pa. Superior Ct. 566; Hunter v. Bilheimer, 22 Pa. Superior Ct. 622.

Plaintiff was not deceived and was not induced by such deception to dispose of his holdings: Cox v. Highley, 100 Pa. 249; Clapp v. Hunt, 276 Pa. 127; Jamestown I. & M. Co. v. Knofsky, 291 Pa. 60.

Weiss was not the agent of defendants.

Plaintiff does not come into court with clean hands: Binkley v. Nolt, 46 Pa. Superior Ct. 531; Hershey v. Weiting, 50 Pa. 240; Reynolds v. Bolland, 202 Pa. 642.

OPINION BY MR. JUSTICE WALLING, November 24, 1930:

This bill was filed by Avery Bishoff, plaintiff, against Valley Dairy Company et al., defendants, praying, inter alia, for a decree declaring defendants trustees ex malificio for plaintiff for certain corporate stock, because of alleged fraud. The case was heard upon bill, answer and testimony, and in due course a final decree was entered dismissing the bill and plaintiff has appealed. A careful examination of the record discloses no cause for reversal.

The defendant, Valley Dairy Company, was chartered in 1924, as the result of the combination of sixteen individuals formerly engaged in the same general line of business. The capital stock was $100,000, divided into 1,000 shares of $100 each (500 being common and 500 preferred stock). Each individual put his business into the corporation and received therefor, inter alia, certain shares of its stock. Plaintiff received 30 shares of the common and 145 shares of the preferred stock and the corporation's note of $8,273.26. To meet the objection that he was receiving too much for the business he turned in, which was an ice cream business, he gave the corporation a written agreement that he was to manage that department and if at the end of five years it had not shown a profit of $50,000 he would return to the corporation $10,000 worth of the preferred stock. Henry A. Brown became president, S. O. Holland, vice-president, and Charles H. Lewis, treasurer, and plaintiff a director of the corporation. The corporation's business was started at East Pittsburgh early in 1925 and for some reason the ice cream department did not prove a financial success. In October, 1926, this matter, including the sale of plaintiff's entire interest in the corporation, was discussed by plaintiff and other directors and officers. The discussion ended in an agreement that the plaintiff sell his common stock to the corporation for its par value, $100 a share, his preferred stock at $200 a share and payment of his note. The consideration was to be paid him, $8,000 cash, and balance by the corporation's mortgage bonds. As part of the agreement, Mr. Brown was to buy $20,000 of the bonds. The agreement was reduced to writing by plaintiff but was not signed. In consideration of this transfer of stock, etc., the corporation released plaintiff from the contract as to the ice cream business, which he then burned in the presence of the corporate officers. This done, plaintiff went to Florida without executing the agreement for the transfer of his stock. Some weeks

later, an option in accord therewith was forwarded to him. This he changed from $3,000 to $6,000 for his common stock, saying he had changed his mind and concluded it was worth that amount. He also made another slight change to his advantage. This was in direct violation of the agreement under which he secured the cancellation of the ice cream contract, and was not accepted by the corporation.

Nothing further was done about the matter until plaintiff returned from Florida near the end of May, 1927, when a meeting of the stockholders was called, at which there was a discussion as to the purchase or sale of corporate stock, and each stockholder offered to sell his stock for the same price and on practically the same terms contained in plaintiff's option sent from Florida. He took the matter up, but was unable to get financial support and it was dropped. Thereafter, plaintiff took up the question of the sale of his holdings in the Valley Dairy Company with Bernath Weiss, president of the Peoples State Bank of East Pittsburgh, and on July 25, 1927, gave him an option to purchase such holdings for practically the same price plaintiff had stipulated in the option he had sent back from Florida, but on better terms for him, as he was to receive the full amount, $43,272.26, in cash, less a commission of $1,500 which he allowed Weiss. This option was closed on August 4, 1927, when the stock was transferred to Weiss and the full consideration, less the commission, paid by him to plaintiff. On the same day Weiss sold and transferred the same stock and note to the Valley Dairy Company for the amount he had paid therefor, including the commission, which represented his profit on the transaction. The corporation gave checks to Weiss for the entire consideration. Weiss is dead, but the evidence fully supports the chancellor's finding that he did not act for the corporation in purchasing the stock from plaintiff.

In September, 1926, the officers of the corporation, without the knowledge of the other directors or other stockholders took $30,000 of corporate funds from the checking account and placed it in the same bank in the name of the corporation in an interest bearing account. It does not appear that this deposit represented the earnings of any particular year. Later, an annual statement of the business of the corporation for that year, prepared for the taxing authorities, of which plaintiff obtained a copy, omitted mention of this item and showed a small deficit for the year. In April, 1927, a like amount was deposited in like manner in the Braddock National Bank. Thereafter, in June, 1928, the Rieck-McJunkin Dairy Company took options for the purchase of the defendant corporation's business, which were never closed, but, while pending, the officers of the Valley Dairy Company called a meeting of the stockholders and distributed to them the $60,000 contained in the two special deposits, which they could properly do under the option. Plaintiff, being then informed of the special deposits and the distribution made thereof, filed this bill to set aside the sale of his stock, on the ground of fraud. The answer denied, inter alia, the averments of fraud. The chancellor found the facts in favor of the defendants, all of which were affirmed by the court in banc. We are concluded by the findings in so far as supported by adequate evidence: Commonwealth v. Piel Const. Co. et al., 284 Pa. 69; Lafean v. American Caramel Co., 271 Pa. 276; Steinmeyer v. Siebert, 190 Pa. 471; Bannon v. Bank, 14 Pa. Superior Ct. 566. It is found that Weiss bought plaintiff's stock for himself and not as agent for the corporation, that the corporate officers acted honestly in making the special deposits, that they did not refer plaintiff for information to the statement of the business for the year 1926 prepared for the purpose of taxation, and that he did not rely thereon when he sold his stock. There is a further finding that he received

full value for his stock and more than its book value, including the $60,000 of special deposits. That plaintiff was not misled by the annual statement when putting a value upon his stock seems clear from the fact that he agreed upon the price of his stock in connection with his release from the ice cream contract and later in the option he sent from Florida, both before the annual statement was prepared.

The chancellor also concludes that plaintiff was not the victim of fraud and that, in as much as he repudiated his agreement for the sale of his stock to the corporation under which he had obtained his release from the ice cream contract, he did not come into a court of equity with clean hands. The court in banc, on affirming these findings and conclusions, dismissed the bill.

Unquestionably, on the facts as found, the dismissal of the bill was inevitable; but assuming for the purpose of this discussion, that plaintiff's strenuous contention of fraud, concealment of corporate assets and misinformation given him by corporate officers, should have been found, even so, in our opinion, the bill was properly dismissed. When plaintiff sold his holdings to Weiss he intended to and did dispose of his entire interest in the corporation. Under the findings, we are bound to assume that Weiss was an innocent purchaser for value. Moreover, the contract being executed, in order to recover the stock from the corporation to which it was transferred, plaintiff required the affirmative action of equity—in other words, that defendants, because of fraud, held the stock as trustee ex malificio for plaintiff, and that equity should therefore order its return to him. Of course, there are cases where such action might be proper, but in our opinion this is not one. Plaintiff not only intended to part with his stock, but received its full value, hence, he has no such clear equity as would justify a chancellor in decreeing its return to him.

Plaintiff sustained no loss, as he received $200 a share for the preferred stock, which, by a provision on each certificate, was the price at which the corporation could redeem it. As to the common stock, each certificate contained a provision that the holder must first offer it for sale to the board of directors at a price to be determined by the book value. Plaintiff failed to first offer such stock for sale to the board of directors as therein provided but sold it to Weiss at a higher price than the book value, including the special deposits. Plaintiff failed to show that he received less than the full value of his stock or that he sustained any damages by the alleged fraud; hence, had this been an action at law and the fraud established, there could be no substantial recovery. See Clapp v. Hunt et al., 276 Pa. 127; also 20 Cyc. 13. In actions for fraud, the measure of damages is the difference between the actual value of the property and the amount received for it: Browning v. Rodman, 268 Pa. 575; Curtis v. Buzard, 254 Pa. 61. That plaintiff would not have sold his stock for what he did had he known of the special deposits, if true, does not prove it was worth more.

Again, he who comes into equity must come with clean hands. As stated by Mr. Justice CLARK, speaking for the court, in Orne v. Kittanning Coal Co., 114 Pa. 172, 182: "It is one of the elementary and fundamental principles of equity, that 'he who seeks equity must do equity,' and another, that 'he who cometh into equity, must come with clean hands'; the doors are shut against one, who, in his prior conduct in the very subject-matter at issue, has violated good conscience, good faith or fair dealing." See also Reynolds v. Boland, 202 Pa. 642, 647; Hershey v. Weiting, 50 Pa. 240; Brown v. Pitcairn, 148 Pa. 387. "This maxim [that he who comes into equity must come with clean hands] expresses rather a principle of inaction than one of action. It means that equity refuses to lend its aid in any manner to one, seeking its active interposition, who

has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief": 16 Cyc. 144. Of course, this rule is confined to the matter before the court: Dempster v. Baxmyer, 231 Pa. 28; Englander v. Apfelbaum, 56 Pa. Superior Ct. 145; 21 C. J. 187. What have we here? Plaintiff, in October, 1926, in order to be released from the ice cream contract, deliberately promised to transfer to the defendant corporation for an agreed consideration the identical stock he is now asking equity to return to him, after he has sold it and received a greater price than agreed upon in 1926. His breach of contract in the fall of 1926 did affect the equitable relations of the parties with reference to the identical stock and rights here involved; hence, the case falls within the principle stated in Comstock v. Thompson, 286 Pa. 457. It being a transfer of the same stock from the same party to the same party, as plaintiff contends, the rule should be applied. Plaintiff's prior unconscionable conduct with reference to the same parties and the same property, precludes him from affirmative relief in equity.

Furthermore, plaintiff shows no reason why he desires this particular stock; under such circumstances, the general rule is that equity will not make a mandatory order for the transfer of corporate stock from one holder to another. In Edelman et al v. Latshaw et al., 159 Pa. 644, the rule, as summarized, states: "A bill in equity cannot be sustained to compel the reconveyance of shares of stock sold to defendant under fraudulent representations made by him, where the relief sought is merely compensation in damages. In such a case there is an adequate remedy at law." See also Schimpff v. Dime. Dep. & Dis. Bank, 208 Pa. 380; Rigg v. Ry. Co., 191 Pa. 298; Roland v. Nat. Bank, 135 Pa. 598. To justify an exception to this rule, some special ground must appear.

Even where there is fraud, if it relates to the transfer of personal property and the party has an adequate

remedy at law, equity will not ordinarily take jurisdiction: Costley et ux. v. Smith, 278 Pa. 242; Hyde v. Baker, 212 Pa. 224; Mackintosh v. Tracy, 4 Brewster (Pa.) 59, 159. See also opinion of Judge ENDLICH, in Kaul, Admr., v. Henke et al., 2 Pa. Dist. R. 236; Rimes v. Rimes, 152 Ga. 721, 111 S. E. 34, 22 A. L. R. 1030. Plaintiff has a full and adequate remedy at law, by an action of deceit, if he has been damnified by the fraud of the defendants or any of them. His claim is, that because of the fraudulent information given him by the officers of the corporation, as to its resources, etc., he sold his stock at less than its value, by which he suffered loss. Certainly, for that the remedy at law is adequate. In substance, he asks for no relief not obtainable at law; therefore, equity should not take jurisdiction. This question was raised by the defendants in their preliminary answer, and again at the close of plaintiff's evidence.

The decree is affirmed and the appeal is dismissed at the costs of appellant.