## Woods et al. v. Suppan et al.

*Orrin E. Boyle,* for plaintiffs.
*D. M. Garrahan* and *Iobst & Getz,* for defendants.

HELFRICH, Chancellor, August 7, 1944.—Defendant, Frank J. Suppan, is and has since August 17, 1943, been the holder of Restaurant Liquor License No. R. 16339. This license authorizes the sale of liquor and malt beverages at a restaurant known as "Woody's Cellaret" located at Nos. 114-116 South Sixth Street, Allentown, Pa., which property was and presently is owned by plaintiffs herein. Plaintiffs had formerly, from February 10, 1939, to August 16, 1943, held the liquor license recited and conducted the restaurant and café referred to during that period.

On May 13, 1943, plaintiffs by written instrument agreed for the sum of $1,000, to transfer to defendant, Suppan, the restaurant liquor license, restaurant business and good will thereof, providing orally and by separate written agreement that if he, Suppan, at any

time in the future decided to sell the license and restaurant business, the first opportunity to purchase must be given to plaintiffs or either of them. Plaintiffs, owners of the property, restaurant and café equipment, at the same time leased the basement of their premises, with restaurant and barroom fixtures, to Suppan "so long as he shall retain the license for the premises", by yearly lease with renewal privilege at $125 per month.

On February 18, 1944, defendant, Frank J. Suppan, agreed to transfer the restaurant liquor license to defendant, Carl Hoffman, and to apply for the transfer thereof to premises No. 536 Hamilton Street, Allentown, Pa., such application having been made to the Pennsylvania Liquor Control Board No offer of license transfer having been made to plaintiffs, who are ready and willing to repurchase, as provided by oral and written agreement, this proceeding was instituted to restrain defendant, Suppan, from transferring, and both defendants, Suppan and Hoffman, from proceeding with their application to transfer, the liquor license in controversy. Defendants filed preliminary objections to plaintiffs' bill.

We are primarily concerned with the contractual and property rights involved in this litigation, the purpose of which unquestionably is to retain the restaurant liquor license privilege for premises Nos. 114-116 South Sixth Street, Allentown, Pa., the building, restaurant and barroom equipment of which are owned by plaintiffs. If there are no contractual or exceptional personal property rights involved, equity will certainly not intervene: Henry's Pennsylvania Equity Jurisdiction and Practice, sec. 36; Meehan v. Owens, 196 Pa. 69. Plaintiffs contend, however, that such rights are involved, because of the numerical limitation upon such licenses imposed by the Act of June 24, 1939, P. L. 806, 47 PS §744-1001 to 1003. This legislation was already effective at the time the license was transferred by

plaintiffs to defendant, Suppan (August 16, 1943), and the quota was already at that time, as it now is, exceeded.

The difficulty with plaintiffs' proposition is that in Pennsylvania there never has been such an exceptional property right in a liquor license, warranting the invocation of equitable powers: Meehan v. Owens, supra; Effinger v. Hain, 10 Dist. R. 107; nor, indeed, is there any market value attributable thereto: Cronin v. Sharp, 16 Pa. Superior Ct. 76. Then, as now (Pennsylvania Liquor Control Act of November 29, 1933, Sp. Sess., P. L. 15, art. IV, sec. 408, as amended, 47 PS §744-408), licenses might not be assigned. The license is in no wise a property right, merely a privilege: Meehan v. Owens, supra; Cronin v. Sharp, supra; Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, and cases therein cited. It may at any time be taken away, abridged or restricted by the governing authorities without compensation to the holder.

As indicated by these decisions, the right to a license might be terminated or taken away before the expiration of these proceedings, and equity will not intervene to accomplish idle things: Meehan v. Owens, supra. Nor are we impressed with plaintiffs' special view of the matter, for they knew or must have known what they were giving up when they parted with the license. The grant of the license privilege was made by the Commonwealth, and it was full, complete, and outright grant to the defendant, Suppan, untrammeled by any secret or separate obligation to the plaintiffs, and vested with all the rights conferred by the acts of assembly of the Commonwealth. If plaintiffs sought to hamper the privileges granted to Suppan, they themselves have been guilty of fraudulent conduct in this transaction, for which additional reason we cannot give ear to their complaint: Henry's Pennsylvania Equity Jurisdiction and Practice, §147; Reynolds v. Boland, 202 Pa. 642; Bishoff v. Valley Dairy Co. et al., 302 Pa. 125.

Plaintiffs consented to the transfer of license to the defendant, Suppan. This act enabled the Commonwealth to make the transfer. Once made, it carried with it, from the Commonwealth, all the privileges conferred by law, including that of consenting to a subsequent transfer. The plaintiffs could not consent to a transfer with strings attached, nor agree with Suppan for such conditional consent, without being guilty of a fraud upon the Commonwealth. In such case equity will not aid them, nor would equity interfere to enable plaintiffs to do, or endeavor to do, what by law they could not accomplish.

We are aware of a contrary decision in DiPietro v. Cichilli, 38 D. & C. 404, but cannot agree with the reasoning of the learned chancellor, being convinced that the considerations here raised are paramount. In our view they dispose of the issue before us.